1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10

11   DONNA K. HICKMAN,                    Case No. 8:17-cv-00475-GJS

12            Plaintiff

13        v.                              **MEMORANDUM OPINION AND ORDER**

14   NANCY A. BERRYHILL, Acting
     Commissioner of Social Security,
15
              Defendant.
16
                          **I.    PROCEDURAL HISTORY**
17
          Plaintiff Donna K. Hickman ("Plaintiff") filed a complaint seeking review of
18
     Defendant Commissioner of Social Security's ("Commissioner") denial of her
19
     application for Disability Insurance Benefits ("DIB"). The parties filed consents to
20
     proceed before the undersigned United States Magistrate Judge [Dkts. 11, 12] and
21
     briefs addressing disputed issues in the case [Dkt. 21 ("Pltf.'s Br.") & Dkt. 22
22
     ("Def.'s Br.").] The Court has taken the parties' briefing under submission without
23
     oral argument. For the reasons set forth below, the Court affirms the decision of the
24
     ALJ and orders judgment entered accordingly.
25
                  **II.   ADMINISTRATIVE DECISION UNDER REVIEW**
26
          On December 29, 2013, Plaintiff filed an application for DIB, alleging that
27
     she became disabled as of July 1, 2010. [Dkt. 16, Administrative Record ("AR")
28

1   15, 122-125.]  The Commissioner denied her initial claim for benefits on May 20,

2   2014.  [AR 13; 54-66.]  On May 6, 2015, a hearing was held before Administrative

3   Law Judge ("ALJ") John W. Wojciechowski.  [AR 27-51.]  On June 17, 2015, the

4   ALJ issued a decision denying Plaintiff's request for benefits.  [AR 13-26.]  Plaintiff

5   requested review from the Appeals Council, which denied review on January 19,

6   2017.  [AR 1-6.]

7           Applying the five-step sequential evaluation process, the ALJ found that

8   Plaintiff was not disabled.  *See* 20 C.F.R. §§ 404.1520(b)-(g)(1).  At step one, the

9   ALJ concluded that Plaintiff has not engaged in substantial gainful activity since

10  July 1, 2010, the alleged onset date, through December 31, 2013, her date last

11  insured.  [AR 15.]  At step two, the ALJ found that Plaintiff suffered from the

12  following severe impairments: aortic valve disease, congestive heart failure status

13  post pacemaker implant, multiple trigger finger releases and hypertension.  [*Id.*

14  (citing 20 C.F.R. § 404.1520(c)).]  Next, the ALJ determined that Plaintiff did not

15  have an impairment or combination of impairments that meets or medically equals

16  the severity of one of the listed impairments.  [AR 15 (citing 20 C.F.R. Part 404,

17  Subpart P, Appendix 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.]

18          The ALJ found that Plaintiff had the following residual functional capacity

19  (RFC):

20
21                  the [Plaintiff] can lift and/or carry twenty pounds
                    occasionally, ten pounds frequently; the claimant can
22                  stand, walk or sit for six hours out of an eight-hour
                    workday; the claimant can occasionally climb, balance,
23                  stoop, kneel, crawl and crouch; the claimant cannot climb
                    using ladders, ropes or scaffolds; the claimant can
24                  frequently handle and finger bilaterally.

25  [AR 16-20.]  Applying this RFC, the ALJ found that Plaintiff was capable of

26  performing past relevant work as a title examiner (DOT 119.287-010) as generally

27  performed and, thus, is not disabled.  [AR 21-22.]

28

2

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074. The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

### IV. DISCUSSION

Plaintiff contends that the ALJ erred in his assessment of Plaintiff's credibility.

**A. The ALJ's Decision Sets Forth Specific Reasons for Finding Plaintiff Not to Be Credible.**

Plaintiff first challenges whether the ALJ provided specific reasons for rejecting Plaintiff's testimony about her symptoms. "[T]o ensure our appellate review is meaningful,…we require the ALJ to specifically identify the testimony [from a claimant] she or he finds not to be credible and…explain what evidence undermines the testimony." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (internal quotation omitted). Accordingly, "[g]eneral findings are insufficient." *Id.* (internal quotation omitted). And as the Ninth Circuit held in *Treichler*, "boilerplate statement[s]" and "introductory remark[s]," *without more*, "fall[] short of meeting the ALJ's responsibility to provide 'a discussion of

the evidence' and 'the reason or reasons upon which' [her] adverse determination is based." *Id.* at 1103.[1]

Here, Plaintiff claims that the ALJ violated his duty to provide specific reasons because the ALJ, according to Plaintiff, gave only the following boilerplate:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent those statements are inconsistent with the residual functional capacity assessment herein.

[Pltf.'s. Br. at 5 (quoting AR 19).] And this Court would agree, if that were the only thing the ALJ said about Plaintiff's credibility. But the ALJ said far more.[2] First, the ALJ explained that the "physical and mental ability and social interactions required in order to perform [her] activities are the same as those necessary for obtaining and maintaining employment and are inconsistent with the presence of an incapacitating or debilitating condition." [AR 18.] Second, the ALJ contrasted Plaintiff's description of her disabling pain with her conservative treatment. [*Id.*] Third, the ALJ explained that the medical records are "inconsistent with the alleged severity of her symptoms and functional limitations and diminishes her credibility of those allegations." [AR 19.]

Plaintiff's own brief further undercuts her position. After claiming that the ALJ's decision does not present specific reasons for discounting her testimony,

---

[1] Relevant here, the Ninth Circuit explained in *Treichler* that "after making [a certain] boilerplate statement, the ALJs typically identify what parts of the claimant's testimony were not credible and why." *Treichler*, 775 F.3d at 1103. Thus, it is fair to say that there is no black letter rule against using boilerplate introductory statements.

[2] Whether the ALJ stated his bases for her credibility determination is a question different from whether the ALJ's reliance on those bases was appropriate. The latter is addressed *infra* at Part IV.B.

Plaintiff attacks the ALJ's reasons for finding her not to be credible. [*See, e.g.*, Pltf.'s. Br. at 6 ("it appears that the ALJ simply rejects Hickman's testimony based on a belief that the testimony is not credible because it lacks support in the objective medical evidence."); *id.* at 15 ("The ALJ's other observation regarding Ms. Hawkin's appearance at the hearing is also not a legally sufficient rationale."); *id.* at 9 ("Even the fact that Hickman has some ability to perform something is not reason enough to find him [sic] not credible."); *id.* at 10 ("The ALJ also rejects Hickman because the ALJ believes Hickman has only had care that was conservative in nature.").] Accordingly, the ALJ provided specific reasons for the credibility determination.

## B. The ALJ's Opinion Provides At Least One Clear and Convincing Reason for the Credibility Determination.

Plaintiff next asserts that the ALJ failed to state sufficient reasons for discounting her credibility. [Pltf.'s Br. at 6-13.] Because there is no allegation of malingering and the ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" [AR 19], the ALJ's reasons must be clear and convincing. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Even if "the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony," if he "also provided valid reasons that were supported by the record," the ALJ's error "is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (internal quotation omitted).

Here, the ALJ gave three reasons to reject Plaintiff's credibility: (1) inconsistencies between Plaintiff's testimony and her daily activities; (2) Plaintiff's conservative treatment; and (3) inconsistencies between the objective medical evidence and Plaintiff's allegations of disabling limitations. The Court takes each in turn.

5

**1. Inconsistencies Between Plaintiff's Testimony And Her Daily Activities**

The ALJ found that Plaintiff's activities of daily living were inconsistent with her claim that she was unable to perform substantial gainful activity. [AR 18.] *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (finding that if a Plaintiff's level of activities is inconsistent with her claimed limitations then the activities of daily living have a bearing on the Plaintiff's credibility). Plaintiff testified that she lived alone, drove once a day, and did her own shopping. [AR 31, 38.] She testified that she spent most of her time with her family and her eleven grandchildren. [AR 41-42.] In addition, until 2014, Plaintiff played piano and bowled once a week. [AR 37-38.] In fact, Plaintiff bowled in the 2014 national competition. [AR 41.] In addition, in her December 2013 function report, Plaintiff reported that she had no issues with personal care, was able to prepare simple meals for herself, and her children assisted her with the household chores. [AR 173-174.] The ALJ found that such activities, even if not indicative by itself of an ability to work, were inconsistent with Plaintiff's claimed limitations, such as her inability to stand more than fifteen minutes, lift more than two pounds, pay attention for more than ten to fifteen minutes, and complete tasks. [AR 39-40, 177.] *See Molina*, 674 F.3d at 1113 ("Even when those activities suggest some difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the extent they contradict claims of a totally debilitating impairment."). *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 693 (9th Cir. 299) (although daily activities did not show that the Plaintiff could work, "it did suggest that Valentine's later claims about the severity of his limitations were exaggerated."). Plaintiff does not address the finding of inconsistency, let alone argue it is unsupported by substantial evidence. Plaintiff only argues that her daily activities are not sufficient, by themselves, to find her capable of working—a finding the ALJ did not make. Accordingly, the Court finds that ALJ properly determined that Plaintiff's daily activities contradicted her claims

6

1      of debilitating impairment.  This is a clear and convincing reason for finding

2      Plaintiff less than fully credible.  The Court's analysis could end here.

3                  **2.  Plaintiff's Conservative Treatment**

4                  The ALJ's reliance on Plaintiff's treatment history was also a clear and

5      convincing reason for finding her less than fully credible.  It is settled law that an

6      ALJ may consider "unexplained or inadequately explained failure to seek treatment

7      or to follow a prescribed course of treatment" to bear on a claimant's credibility.

8      *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see Burch*, 400 F.3d at

9      681 ("The ALJ is permitted to consider lack of treatment in his credibility

10     determination.").

11                 Plaintiff testified at the hearing that she is unable to work because she has

12     difficulty with concentration and memory due to a head injury she sustained in

13     2010.  [31; 33-35; 42-44.]  Plaintiff testified that she saw a neurologist for her head

14     injury and that the neurologist prescribed Prozac.  [AR 17; 35-36.]  The neurologist

15     also recommended that Plaintiff play computerized games, puzzles, and "old games"

16     to help improve her cognitive skills.  [AR 456.]  Plaintiff stated that she did not

17     receive any other treatment for her mental condition.  [AR 36.]

18                 Plaintiff argues that her treatment was not conservative because she received

19     surgery to fix her pacemaker.  [Pltf.'s Br. at 11.]  However, Plaintiff testified that

20     her "pacemaker works properly now."  [AR 34.]  The reason Plaintiff cannot work is

21     because of "residual [effects] from the head injury that [she] suffered" when she fell

22     in 2010.  Thus, Plaintiff's surgery is not relevant to determining whether the

23     treatment Plaintiff received for her head injury was conservative.  The Court finds

24     that the ALJ properly determined that Plaintiff's concentration and memory

25     limitations were not as severe as alleged based on the limited medical treatment

26     Plaintiff received.

27     *///*

28     ///

7

### 3. Inconsistencies Between Plaintiff's Testimony And The Objective Medical Evidence

Lastly, the ALJ found that the objective medical evidence was inconsistent with Plaintiff's testimony regarding her limitations. [AR 18-19.] Plaintiff asserts that the ALJ improperly relied on a lack of objective evidence in rejecting her subjective symptom testimony because "rejection of a claimant's testimony based on a lack of objective evidence is always legally insufficient." [Pltf.'s Br. at 7.] This is incorrect. "While subjective pain testimony cannot be rejected on the *sole ground* that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9the Cir. 2001) (citing 20 C.F.R. § 404.929(c)(2) (emphasis added). Here, the objective medical evidence is one of three reasons the ALJ gave to discount Plaintiff's credibility (the Court found the first two reasons to be proper in *supra* sections IV.B.1 and IV.B.2).

As the ALJ noted, Plaintiff alleged that she was unable to work due to concentration and memory limitations she suffered from after receiving a head injury in 2010. [AR 17, 42-44.] However, Plaintiff's testimony was undermined by an April 2014 neurological examination, May 2014 CT scan of Plaintiff's head, and a May 2014 complete psychiatric examination, all of which revealed normal findings. [AR 15-16; 334-335; 454-455; 458.] Plaintiff also testified that she was unable to be on her feet for more than fifteen minutes before needing to rest and sit due to disc bulges in her back. [AR 17, 40.] However, as the ALJ pointed out, Plaintiff's physical examinations throughout the relevant period consistently revealed normal findings. [AR 18-19; 239; 241; 275; 284; 306; 311; 317; 510; 625-626.] Plaintiff's pacemaker reports also revealed a properly functioning pacemaker without reprogramming, good sensing and pacing threshold and no atrial fibrillation. [AR 20; 374.] Additionally, Plaintiff's neurologist recommended that Plaintiff perform thirty minutes of aerobic exercise daily, which further undercuts Plaintiff's

allegation that she could not be on her feet for more than fifteen minutes.  [AR 456.]

Thus, the ALJ properly found that Plaintiff's testimony was inconsistent with the

medical evidence.

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the

Commissioner finding Plaintiff not disabled is AFFIRMED.


**IT IS SO ORDERED.**

DATED:  June 6, 2018                         _____

GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

9